UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA BRADFORD,

       Plaintiff,                                  Hon. Wendell A. Miles

v.                                                          Case No. 1:07-CV-50

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 43 years of age at the time of the ALJ's decision. (Tr. 22). She successfully completed high school worked previously as a janitor, machine operator, and receptionist/secretary. (Tr. 79-84, 107, 529).

Plaintiff applied for benefits on April 2, 2003, alleging that she had been disabled since June 2, 1998, due to COPD. (Tr. 55-57, 71). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 29-54). On October 8, 2004, Plaintiff appeared before ALJ Michael Finnie, with testimony being offered by Plaintiff and vocational expert, Dr. James Lozer. (Tr. 523-72). In a written decision dated April 14, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 21-28). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 6-10). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on June 30, 2001. (Tr. 21, 63-67); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## RELEVANT MEDICAL HISTORY

X-rays of Plaintiff's chest, taken on January 16, 1999, revealed that Plaintiff's heart size and pulmonary vascularity were "normal." (Tr. 269). There was no evidence of infiltrates or effusions. The doctor concluded that there existed no evidence of "active process." *Id.*

X-rays of Plaintiff's chest, taken on March 24, 2000, revealed that her lungs were "clear" with no evidence of pleural fluid. (Tr. 268). Plaintiff's heart size was described as "stable" and "normal." There was also no evidence that Plaintiff's lungs were hyperinflated. The doctor concluded that "no findings to diagnose COPD are seen." *Id.*

On April 14, 2000, Plaintiff participated in a treadmill cardiolite examination. (Tr. 265). A "resting" electrocardiogram revealed "normal sinus rhythm" and a "stress" electrocardiogram revealed "no significant change." Plaintiff exhibited "normal wall motion and ejection fraction." The results of the examination were "normal." *Id.*

On July 24, 2001, Plaintiff participated in a "treadmill stress echo" examination. (Tr. 146). Plaintiff exhibited no chest pain during the examination and there was no evidence of exercise-induced ischemia. Plaintiff exhibited "average aerobic capacity" and "normal heart rate and blood pressure response to exercise." *Id.*

On September 12, 2001, Dr. Geoffrey Hammond (Plaintiff's treating physician) reported that medication "seems to be working" to treat Plaintiff's respiratory complaints. (Tr. 233).

X-rays of Plaintiff's chest, taken on October 4, 2001, revealed that Plaintiff's lungs were "stable and clear of infiltrate" with no evidence of "active process." (Tr. 262).

On March 27, 2002, Dr. Hammond reported that Plaintiff "had done extremely well over winter." (Tr. 229).

X-rays of Plaintiff's chest, taken on May 20, 2002, revealed "pulmonary hyperinflation consistent with COPD," but "no active process." (Tr. 261).

On May 23, 2002, Plaintiff reported to Dr. Hammond that she was "feeling a lot better." (Tr. 220). On June 14, 2002, Plaintiff reported to Dr. Hammond that she was "doing better" and "breathing better." (Tr. 219).

On June 21, 2002, Plaintiff was examined by Dr. Sandra Schuldheisz. (Tr. 149-51). Plaintiff was referred to her by Dr. Hammond "for evaluation of recurrent asthmatic bronchitis and possible COPD." (Tr. 149). Plaintiff reported that she experiences difficulty walking up a flight of stairs, but also reported that she plays softball every week. Plaintiff reported that she "intermittently" uses a nebulizer. *Id.* The results of a physical examination were unremarkable. (Tr. 150-51). Plaintiff participated in a spirogram examination, the results of which were "normal." (Tr. 151). The doctor diagnosed Plaintiff with "progressive dyspnea with cough - likely COPD with chronic bronchitic component." *Id.*

In August 2002, Plaintiff injured her right wrist while riding an all-terrain vehicle (ATV). (Tr. 217, 543-44).

X-rays of Plaintiff's chest, taken on December 11, 2002, revealed "no acute infiltrates or pleural effusions" and "no acute process." (Tr. 260).

On October 15, 2003, Plaintiff was examined by Dr. Schuldheisz. (Tr. 291-92). Plaintiff reported that she was "coughing terribly." (Tr. 291). Plaintiff exhibited "diffuse wheezing" and "a few scattered upper airway rhonchi." The doctor reported that Plaintiff was experiencing an "exacerbation of her COPD." *Id.*

5

On December 23, 2003, Plaintiff reported to the emergency room complaining of right-sided chest pain. (Tr. 298-301). Plaintiff participated in an echocardiogram, the results of which "showed normal sinus rhythm. . .with no acute changes." (Tr. 300). X-rays of Plaintiff's chest were "clear." *Id.* A CAT scan of Plaintiff's chest revealed no evidence of a pulmonary embolus. (Tr. 299). Plaintiff was given Toradol and morphine to treat her pain, after which the doctor reported that she "could not elicit any tenderness in the anterior chest, even though a few minutes before [Plaintiff] had been wincing in pain every time she moved or took a deep breath or if I pushed on her chest." (Tr. 301). The doctor diagnosed Plaintiff with musculoskeletal chest wall pain and possible drug-seeking behavior. (Tr. 299).

On August 16, 2004, Plaintiff was examined by Dr. Schuldheisz. (Tr. 359-60). The doctor reported that Plaintiff's lungs "sound quite good for her." (Tr. 359). Plaintiff exhibited "coarse" breath sounds, but no active wheezing. The doctor concluded that Plaintiff's COPD was "clinically stable." *Id.*

As part of her request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 437-522). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. (Tr. 6-10). This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Id.* To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

This additional material consists of medical records dated long after the expiration of Plaintiff's insured status. It is not reasonable to assert that consideration of this material by the ALJ would have led to a different result. Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

**B. The ALJ's Decision**

The ALJ determined that as of the date her insured status expired, Plaintiff suffered from the following severe impairments: (1) chronic obstructive pulmonary disease (COPD); and (2) chronic sinusitis. (Tr. 25). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that despite these impairments, Plaintiff retained the ability to perform her past relevant work as a receptionist/secretary. (Tr. 26-27). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Supported by Substantial Evidence**

Plaintiff bears the burden of demonstrating her entitlement to benefits, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

---

be performed (20 C.F.R. 404.1520(f)).

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date Plaintiff's insured status expired she retained the capacity to perform work activities subject to the following limitations: (1) she can occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds; (2) she can stand, walk, and sit for six hours during an 8-hour workday; (3) she cannot work in a poorly ventilated area; and (4) she cannot work with even moderate exposure to fumes, odors, dusts, or gases. (Tr. 26). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence. A vocational expert testified that an individual with Plaintiff's RFC would be able to perform Plaintiff's past relevant work as a receptionist/secretary. Accordingly, the ALJ concluded that Plaintiff was not disabled.

a. The ALJ Properly Assessed the Medical Evidence

On August 14, 2003, Plaintiff's counsel deposed Dr. Hammond. (Tr. 163-80). Plaintiff asserts that because Dr. Hammond was her treating physician, the ALJ was obligated to afford controlling weight to the opinions expressed by the doctor during this deposition. Plaintiff further asserts that the ALJ failed to give sufficient reasons for not giving controlling weight to the opinions expressed by Dr. Hammond during this deposition.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

As the Sixth Circuit recently made clear, however, when an ALJ chooses to accord less than controlling weight to the opinion of a treating physician, he must adequately articulate his rationale for doing so. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-47 (6th Cir. 2004). As the *Wilson* court held:

> If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors - namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion.
>
> Importantly for this case, the regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Id.* at 544 (internal citations omitted).

As the *Wilson* court concluded, failure to comply with this requirement is not subject to harmless error analysis. *Id.* at 546-47. As the court expressly stated:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. . . .To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory.

*Id.* at 546 (internal citations omitted).

> However, the *Wilson* court further observed that:
>
> We do not decide the question of whether a *de minimis* violation may qualify as harmless error. For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal. There is also the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant. Or perhaps a situation could arise where the Commissioner has met the goal of § 1527(d)(2) - the provision of the procedural safeguard of reasons - even though she has not complied with the terms of the regulation.

*Id.* at 547 (internal citations omitted).

According to the relevant regulation, medical opinions are defined as statements "that reflect *judgments* about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2) (emphasis added). On the other hand, mere *observations* about a claimant's condition do not qualify as "medical opinions." *See Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) ("[o]bservations about plaintiff's gait and ambulation, then, are more like statements made by plaintiff about his conditions, statements that the ALJ here found not entirely credible when compared to the objective medical evidence").

As Defendant correctly asserts, most of the doctor's testimony concerns Plaintiff's condition as of the date of the deposition, more than two years after the expiration of her insured status. While the doctor did offer several observations about Plaintiff's condition prior to the date of the deposition, the doctor failed to indicate the time frame to which his testimony applied. In fact,

the only opinion expressed by the doctor which clearly regards Plaintiff's condition prior to the expiration of her insured status is his statement that Plaintiff suffered from "respiratory problems" in 1997. (Tr. 175).

While the ALJ did not discuss Dr. Hammond's deposition testimony, he did conclude that as of the date Plaintiff's insured status expired she suffered from respiratory problems (COPD and chronic sinusitis). As the *Bass* court recently held, an ALJ's failure to articulate "specific reasons for the weight given to the treating source's medical opinion" is harmless where the ALJ's opinion is "completely consistent" with the opinion in question. *See Bass*, 499 F.3d at 510 (citing *Wilson*, 378 F.3d at 547). Because the ALJ's opinion is "completely consistent" with Dr. Hammond's opinion that Plaintiff suffered from respiratory problems in 1997, the ALJ's failure to discuss Dr. Hammond's deposition testimony is harmless.

b. The ALJ Properly Evaluated Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that she stopped working in 1998 because her respiratory impairments caused her to regularly be absent from work one or two days each week. (Tr. 535, 559-60). Plaintiff asserts that this testimony establishes that prior to the expiration of her insured status she was unable to perform work activities on a regular basis and was, therefore, disabled. The ALJ discounted Plaintiff's testimony, finding that Plaintiff's "allegations of disabling impairments are not supported by the clinical signs and diagnostic findings."

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a

claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t

is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

As the ALJ correctly concluded, the medical evidence does not support Plaintiff's assertion that her condition prevented her from working 1-2 days each week in 1998 or at any date prior to the expiration of her insured status. The results of diagnostic testing consistently revealed that Plaintiff's impairments, prior to the expiration of her insured status, were less than disabling in nature. Moreover, during this time period, none of Plaintiff's care providers imposed on Plaintiff limitations which are inconsistent with the ALJ's RFC determination. While the Court does not dispute that Plaintiff's respiratory impairments imposed on her a certain degree of limitation during the relevant time period, the ALJ's credibility determination is nonetheless supported by substantial evidence.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  January 10, 2008                              /s/ Ellen S. Carmody
                                                     ELLEN S. CARMODY
                                                     United States Magistrate Judge