UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| |
BRENDA K. BRADFORD,                          | Case No. 1:07-cv-50
                                             |
   Plaintiff,                                | HONORABLE PAUL L. MALONEY
                                             |
      v.                                     | Magistrate Judge Carmody
                                             |
COMMISSIONER OF SOCIAL SECURITY,             |
                                             |
   Defendant.                                |
                                             |

**Order Overruling the Plaintiff's Objection and Adopting the R&R**
**Affirming the Denial of Disability Benefits**
**Terminating the Case**

This matter was referred to the Honorable Ellen S. Carmody, United States Magistrate Judge, who issued a Report and Recommendation ("R&R") on Thursday, January 10, 2007.

Title 28 U.S.C. § 636(b)(1) provides, "Within ten days after being served with a copy [of an R&R], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." Likewise, Federal Rule of Civil Procedure 72 provides that "[w]ithin 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations." Calculating the ten-day period as prescribed by Federal Rule of Civil Procedure 6(a), the deadline for objections was midnight on Friday, January 25, 2008; therefore, the plaintiff's objection filed on Thursday, January 17, 2008, was timely. The court also finds that plaintiff's objection is sufficiently specific and articulated to trigger *de novo* review of the portions of the R&R to which

she has objected.

The court finds the R&R to be well-reasoned and is unconvinced by the plaintiff's objection. For the reasons explained by the R&R, substantial evidence supported Administrative Law Judge ("ALJ") Finnie's determination that Bradford's impairments – chronic obstructive pulmonary disorder ("COPD")[1] and chronic sinusitis – did not render her totally disabled from her alleged disability-onset date (June 2, 1998) through her date last insured (June 30, 2001), during which time she was about 36 to 39 years old. In particular, substantial evidence in the administrative record supported the ALJ's findings that Bradford retains the residual functional capacity to (1) occasionally lift or carry fifty pounds and frequently lift or carry twenty-five pounds, (2) stand, walk, or sit for six hours during an eight-hour workday, but cannot (3) work in a poorly ventilated area or (4) work with even moderate exposure to fumes, odors, dusts, or gases. That requires the court to sustain the ALJ's resultant conclusion that she retained the ability to perform her past relevant work as a secretary/receptionist.

The ALJ's opinion, however, did not mention the August 2003 deposition of one Dr. Hammond, and Bradford contends that this was reversible error. Bradford argued before the magistrate judge that the ALJ was obligated to give controlling weight to Dr. Hammond's testimony because he was her treating physician. It is true that the opinions of treating physicians are "[g]enerally . . . given substantial, if not controlling, deference." *Vance v. Comm'r of Soc. Sec.*, No.

---

[1] COPD is a general term used for diseases that entail the permanent or temporary narrowing of small bronchi (the subdivisions of the trachea which are used to convey air to and from the lungs), which slows forced expiratory flow. STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006) at 554 (chronic obstructive pulmonary disorder) and 271 (bronchus) and 269 (bronchi). The term COPD is used "especially when no etiologic [causal] or other more specific term can be applied." *Id.* at 554.

07-5793, – F. App'x –, –, 2008 WL 162942, *3 (6th Cir. Jan. 15, 2008) (McKeague, J.) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)); *see also Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) (Griffin, J.) (referring to "the mandatory deference accorded to treating physicians in Social Security cases").

Indeed, if a treating source's opinion is uncontradicted, it must be given complete deference. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (citing *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)); *see, e.g., Martin v. Comm'r of Soc. Sec.*, 61 F. App'x 191, 199-201 (6th Cir.) (opinions of treating psychiatrist and treating psychologist were entitled to complete deference where they were not contradicted by any expert medical opinion; the ALJ erred by rejecting their interpretation of claimant's Global Assessment of Functioning ("GAF") scores in favor of the ALJ's own interpretation of the GAF scores and daily-activity logs), *clarified on other grounds*, 82 F. App'x 453 (6th Cir. 2003).

A treating physician's opinion is entitled to such deference, however, "only . . . when supported by objective medical evidence," *Vance*, – F. App'x at –, 2008 WL 162942 at *3 (quoting *Warner*, 375 F.3d at 390), and it may be rejected in whole or in part when it contradicts substantial objective medical evidence in the record. *See, e.g., Sullenger v. Comm'r of Soc. Sec.*, No. 07-5161, – F. App'x –, –, 2007 WL 4201273, *6 (6th Cir. Nov. 28, 2007) (ALJ did not err in giving limited weight to treating physician's opinion about physical limitations of claimant who injured her back in December 1992, because it was contradicted by fact that he had never placed limitations on her activities in three years of treating her, by the contrary assessment of three examining physicians, and by two 1993 MRIs, a 1999 CT scan, and a 1999 EMG/nerve-conduction study). On this score, the court is obligated to follow the Social Security regulation entitled "Treatment relationship,"

which explains,

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.
>
> When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section [length and treatment relationship, frequency of examination, and nature and extent of treatment relationship], as well as the factors in paragraphs (d)(3) through (d)(6) of this section [supportability by medical evidence - especially laboratory findings and medical signs, consistency with the record as a whole, specialization, and other factors] in determining the weight to give the opinion. * * *

20 C.F.R. § 404.1527(d)(2) (paragraph break added) (emphasis added).

The same Social Security regulation, however, commits the agency to contemporaneously explaining its reasoning to the claimant whenever it chooses not to give controlling weight to the opinion of a treating source: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  20 C.F.R. § 404.1527(d)(2).  Our Circuit holds that the agency's failure to comply with this requirement (to give good reasons for not deferring to the treating source's medical opinion) is generally not subject to harmless-error analysis. *See Wilson*, 378 F.3d at 547.[2]

---

[2]

There is an exception to this rule. "There is . . . a narrow category of cases in which a *de minimis* procedural violation may constitute harmless error, such as when 'a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it' or where the Commissioner 'has met the goal of . . . the procedural safeguard of reasons.'" *Fisk v. Astrue*, No. 06-4677, – F. App'x –, –, 2007 WL 3325869, *6 (6th Cir. Nov. 9, 2007) (Sutton, J.) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

As the Magistrate Judge recognized, however, the agency's error in failing to discuss and give good reasons for the weight given to a treating source's opinion *is* harmless where the Commissioner adopts the opinion of the treating source or makes only findings that are consistent with the opinion. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535-36 (6th Cir. 2001); *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 840 (6th Cir. 2005) (per curiam) (Caldwell, D.J., joined by Siler & Rogers, JJ.) (citing *Wilson*'s dicta to that effect) ("Because the ALJ adopted [former treating physician] Dr. McFadden's diagnoses of depression and post-traumatic stress disorder, any failure to give reasons for the weight accorded to Dr. McFadden's opinion was harmless error."); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456 (6th Cir. 2005) (Boggs, C.J., joined by Batchelder, J., and Gadola, D.J.); *accord Jones v. Barnhart*, No. 02-cv-791, 2003 WL 941722, *4 (S.D.N.Y. Mar. 7, 2003) (ALJ's failure to specifically state the weight accorded to treating physicians' opinions was harmless error where he "engaged in a detailed discussion of their findings and his decision does not conflict with them") (record citation omitted).

The R&R states that the ALJ's opinion is "completely consistent" with treating physician Hammond's deposition testimony because the ALJ also concluded that on Bradford's date last insured, she suffered from the respiratory conditions COPD and chronic sinusitis. Bradford objects that while the ALJ shared the treating physician's conclusion that Bradford suffered from COPD during the insured period, the ALJ diverged from the treating physician's opinion as to the *severity* and disabling effect of that condition. Bradford argues,

When the issue is properly and accurately framed as to whether the *severity and*

---

Because this court determines that *another* exception to the requirement (of giving good reasons for not deferring to a treating source's opinion) applies, there is no need to consider whether *this* exception to the rule applies.

5

> *symptomology* of Claimant's COPD precluded her from working during the insured period, the two opinions . . . are completely *inconsistent*: [t]he treating physician's deposition opined that Claimant's COPD and its recurrent illnesses and progressive problems created episodes [that] "really interrupted" Claimant from being able to work steadily from as far back as about 1998; whereas, the ALJ opined that Claimant's COPD was not disabling. The Report's flawed reasoning does not support application of the Harmless Error Doctrine.
>
> * * *
>
> * * * The Report's reliance on *Bass v. McMahon*, 499 F.3d 506 (6th Cir. 2007) is inappropriate [on] the particular facts of this case, as the ALJ's opinion is not "completely consistent" with Dr. Hammond's medical opinion.

Bradford's Objection at 2.[3]  Bradford's argument fails, however, because the focus of Dr.

---

[3] *Cf. Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589 (11th Cir. 2006):

> Even if Dr. Trowbridge was a treating physician, the Commissioner argues, the ALJ's failure to consider her opinion was harmless error, because the opinion did not contradict the ALJ's findings and was unsupported by objective substantial evidence. As the Commissioner points out, Nyberg takes issue with the ALJ's statement that "no treating physician has expressed the opinion that the claimant has limitations greater than those determined in this decision." One reason Nyberg does so is that Dr. Trowbridge stated on the disability form that Nyberg's limitations had been "slowly progress[ing] since spring of 2000"[,] i.e., gradually getting worse. This observation, the Commissioner contends, is vague, and does not really conflict with the ALJ's determination that Nyberg's condition and limitations were not so severe at the time her insured status expired (in September of 2001) as to prevent her from working at certain jobs then existing in the national economy in significant numbers. Furthermore, the Commissioner argues, any indication to the contrary inferred from Dr. Trowbridge's reports would be unsupported by objective medical evidence.
>
> In essence, the Commissioner contends (and the district court believed) that, even if the ALJ had considered Dr. Trowbridge's opinion, the outcome of the case could not reasonably have changed. The instant case, however, is not one where the unmentioned physician's opinion merely supported the ALJ's conclusion, and was thus unnecessary. On the contrary, the potential impact of Dr. Trowbridge's opinion on the ALJ's analysis is strongly and reasonably disputed by the parties. Thus, we cannot say that the failure to address Dr. Trowbridge's opinion was harmless without reweighing the evidence and engaging in conjecture that invades the province of the ALJ.
>
> * * * The judgment of the district court is therefore reversed, and the case is remanded with instructions to remand the matter to the ALJ for further proceedings

Hammond's opinion renders it not-inconsistent with the ALJ's conclusions about her condition *during the insured period.*

In the deposition, Dr. Hammond's opinions related to Bradford's condition at the time of the deposition (August 2003), not directly to her condition during the insured period, which ended over two years earlier (June 2001). First, the walking and other restrictions that Dr. Hammond supported in the deposition were phrased in the present tense, and Hammond did not opine that he imposed those restrictions or that those restrictions would have been appropriate more than two years earlier during the insured period. *See* Commissioner's Brief at 17 (citing Admin. Tr. at 166, 169, and 173-76). Second, the brief that Bradford submitted to the Magistrate Judge complained that the ALJ's finding that she had had no hospital care during the insured period conflicted with treating physician Hammond's deposition testimony that he had sent her from his clinic to the emergency room. Dr. Hammond did not specify, however, *when* he sent Bradford to the emergency room, so his testimony is not useful on that point and does not contradict the ALJ's finding that Bradford had no hospital visits for COPD care before her DLI on June 30, 2001. Dr. Hammond specifically states only that he sent Bradford to the ER *in July 2001*, when she complained of chest pain and shortness of breath, and July 2001 was *after* the expiration of Bradford's insured status. *See* Commissioner's Br. at 17 (citing Admin. Tr. at 250-51). (Even then, the tests performed at the ER in July 2001 showed "average aerobic activity." Commissioner's Brief at 17 (citing Admin. Tr. at 146).

Finally, Bradford's objection claims that Dr. Hammond opined that "she was really interrupted as far as being able to work steadily from as far back as about 1998," if taken in

---

not inconsistent with this opinion.

*Id.* at 591-93 (citations and footnotes 4-6 omitted).

7

isolation, seems to put the ALJ's conclusion at odds with Hammond's opinion. An examination of the full question and answer from the deposition, however, shows that Dr. Hammond was *not* stating his own medical opinion that Bradford's respiratory issues prevented her from working steadily from 1998 onward. Rather, so far as the record reflects, Dr. Hammond was merely recounting what Bradford alleged about *her impression* of her condition and the limitations *she claimed* it had imposed:

> Q. *What information has the patient shared with you* to – that would give you a picture of her functional abilities?
>
> A. In fact, she's really been frustrated for sometime, she was really interrupted as far as being able to work steadily from as far back as about 1998.

Commissioner's Br. at 18 (citing Admin. Tr. at 170) (emphasis added).

Accordingly, following our Circuit's published decision in *Heston* and the persuasive authorities of *Pasco* and *Hall*, the ALJ's error in failing to discuss Hammond's testimony and explain the weight that he accorded it, was harmless, because Hammond did not render any clear opinion regarding the insured period that was inconsistent with the ALJ's findings and his ultimate conclusion as to disability.[4]

Accordingly, having reviewed the pleadings, the parties' briefs, the R&R, the plaintiff's objection to the R&R and the Commissioner's response thereto, the court hereby **OVERRULES** the plaintiff's objection and **ADOPTS** the R&R.

The Commissioner's denial of disability benefits is **AFFIRMED**.

---

[4]

*Contrast Kirkland v. Astrue*, No. 3:07-cv-74, – F. Supp.2d –, –, 2008 WL 183221, *3 (E.D. Tenn. Jan. 17, 2008)

This case is **TERMINATED.**

This is a final and appealable order.

**IT IS SO ORDERED this 11th day of February 2008.**

/s/
_____

Paul L. Maloney
United States District Judge